UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENARO SERRATO,<br><br>              Plaintiff,<br><br>   v.<br><br>WESTROCK SERVICES, LLC, et al.,<br><br>              Defendants. | Case No.   1:26-cv-01345-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS TO (1) GRANT PLAINTIFF'S MOTION TO REMAND; (2) AWARD PLAINTIFF ATTORNEY'S FEES; AND (3) DENY WESTROCK'S MOTION TO DISMISS AS MOOT<br><br>(ECF Nos. 4, 8)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS |

## I.     INTRODUCTION

Plaintiff Genaro Serrato's complaint alleges various state employment-based claims against Defendant WestRock Services, LLC (WestRock), his former employer, and Karen Azzara, WestRock's human resources (HR) representative.

On April 7, 2026, the presiding District Judge referred two motions to the undersigned: (1) Plaintiff's motion to remand this case to state court, which includes a request for an award of attorney's fees; and (2) WestRock's motion to dismiss.  (ECF No. 12).

After considering the parties' arguments and applicable legal authority, the Court will recommend that (1) Plaintiff's motion to remand be granted; (2) Plaintiff be awarded $ 4,855 in attorney's fees; and (3) WestRock's motion to dismiss be denied as moot.

## II.     BACKGROUND

### A.  Summary of the Complaint

On January 6, 2026, Plaintiff filed his complaint in the Fresno County Superior Court,

1

bringing eight claims under California law relating to his employment with WestRock. (ECF No. 1-2, p. 5). Pertinent here are his claims for harassment based on disability (claim five), defamation (claim six), and invasion of privacy (claim seven) that are asserted against both Defendants. (*Id.* at 12-13).

Plaintiff alleges that WestRock employed him for eighteen years at its container plant, and during this time, he suffered from documented disabilities, including bipolar disorder, type 1 diabetes, and impairments resulting from a hand injury. (*Id.* at 7). After taking a medical leave of absence spanning February 14, 2023 to June 30, 2025, Plaintiff returned to work subject to submitting accommodation requests within thirty days. (*Id.*). However, despite his prior extended medical leave, and knowing Plaintiff's medical conditions, WestRock scheduled him for twelve-hour shifts, which Plaintiff could not work. (*Id.*). Plaintiff had to leave work early, and each time informed his supervisor of the reason and "received medical support affirming his leave was necessary for his health," but "WestRock issued points against [his] attendance." (*Id.*).

Thereafter, Plaintiff alleges that WestRock became increasingly hostile to his accommodation requests. (*Id.* at 7-8). It issued disciplinary warnings or assessed attendance points against Plaintiff despite receiving medical proof to excuse his disability-related absences. (*Id.*).

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), and on the same day, he alleges that an incident occurred involving Azzara.

> On July 10, 2025, WestRock Human Resources representative Karen Azzara telephoned Mr. Serrato's physician's office. During this call, Ms. Azzara falsely accused Mr. Serrato of manipulating and coercing his medical providers into issuing accommodation notes. She further alleged that the medical notes provided by Mr. Serrato were fraudulent and threatened the medical practice with legal action and licensure investigations. Mr. Serrato, shocked to learn that his employer contacted his treating doctor to accuse Mr. Serrato of fraud, immediately wrote to Ms. Azzara on July 11, 2025, inquiring as to why Westrock thought it was appropriate to threaten his doctor with a lawsuit for simply treating Mr. Serrato.
>
> On July 12, 2025, Ms. Azzara wrote back denying that any such threats were made, only that she called to allegedly confirm the restrictions identified in the doctor's note were indeed legitimate. Yet on July 15, 2025, Dr. Haroop Sihota, one of Mr. Serrato's treating physicians, wrote to Ms. Azzara affirming Ms. Azzara had engaged in [the] exact conduct she denied. Specifically, Dr. Sihota noted that Karen called and made statements "suggesting that the patient is manipulating their provider," or that the "provider is being misled or coerced." Dr. Sihota's

2

letter further documented the fact that on the call Karen accused Dr. Sihota of being "very unprofessional" and that Dr. Sihota's accommodation letter "was not necessary for the patient." Dr. Sihota concluded her letter by noting that Karen's comments were "unfounded and very inappropriate," because all decisions are made "based on clinical judgment and professional evaluation." Ms. Azzara's conduct in threatening Plaintiff's physician and accusing her of fraud served no legitimate business purpose and fell completely outside the scope of necessary personnel management.

(*Id.* at 8-9).

Following this incident, Plaintiff continued to make accommodation requests based on his conditions, and WestRock allegedly took adverse action against Plaintiff in response, including assessing points for excused medical absences. (*Id.* at 9). This culminated in Plaintiff's termination in or around November 2025. (*Id.*).

### B. Removal

WestRock removed the case to this Court on February 13, 2026, asserting subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. (ECF No. 1, p. 2). WestRock's notice asserted that "[t]his Court has original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), which provides the district courts shall have original jurisdiction of all civil actions between citizens of different states wherein the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs." (*Id.* at 3). The notice represented that Plaintiff was a California citizen and that WestRock was a Georgia citizen. (*Id.* at 4).

Regarding Defendant Azzara, who is also a California citizen, WestRock's notice stated as follows:

[I]ndividual Defendant Karen Azzara has not been served and is not required to join this motion. To the extent Plaintiff argues that the State Court Action may not be removed because certain of "the parties in interest properly joined and served as defendants [are] citizen[s] of the state in which such action is brought," that argument fails because none of the defendants who are citizens of California have been served with the Complaint.

(*Id.* at 5).

Further, it argued that Azzara was "sham" defendant whose California citizenship could be ignored because Plaintiff failed to state any claim against her. (*Id.* at 6-7).

\\\

### III.     PLAINTIFF'S MOTION TO REMAND[1]

#### A.  Plaintiff's Motion to Remand

On March 13, 2026, Plaintiff filed a motion to remand this case to the Fresno County Superior Court because the Court does not have diversity jurisdiction. (ECF No. 8, pp. 6-7). Plaintiff's motion states that "[t]here is no diversity jurisdiction. Plaintiff is a citizen of California. Defendant Karen Azzara ("Azzara") is a citizen of California. That ends the jurisdictional inquiry." (*Id.* at 6).

Plaintiff next argues that Westrock's reference to "snap-removal" does not provide any basis for jurisdiction when the parties are not diverse, and that "every court to address this argument has held, the fact that a nondiverse defendant has not been served at the time of removal is irrelevant to the complete diversity analysis." (*Id.*).

Additionally, Plaintiff argues that WestRock cannot show that Azzara is a "sham" defendant.

Plaintiff asks the Court to award attorney's fees and costs under 28 U.S.C. § 1447(c), arguing that WestRock lacked an objectively reasonable basis to remove this case. (*Id.* at 7, 13-14).

Lastly, Plaintiff argues that the Court should stay briefing on WestRock's motion to dismiss because a ruling on the motion would ultimately be void if this Court determines that it lacks jurisdiction over the case. (*Id.* at 14).

Plaintiff attaches counsel's declaration, documents about the parties' meet and confer efforts, and service-related documents to the motion to remand.

#### B.  WestRock's Opposition to Motion to Remand

On March 27, 2026, WestRock filed its opposition to Plaintiff's motion to remand. (ECF No. 10). It argues that removal was proper under § 1441(b)(2) and this Court has diversity jurisdiction because Azzara is a "sham" defendant. (*Id.* at 2).

While WestRock maintains that the Court should not remand this case to state court, it

---

[1] On February 20, 2026, WestRock filed a motion to dismiss claims five, six, and seven of the complaint under Federal Rule of Civil Procedure 12(b)(6) and to dismiss Azzara as a defendant. (ECF No. 4, p. 6).  As discussed below, in light of the Court's recommendation on Plaintiff's motion to remand, the Court will not summarize the motion to dismiss in depth.

argues that, if it does, attorney's fees and costs should not be awarded because it had an objectively reasonable basis to remove the case, citing cases noting that courts are divided on whether "snap removal" is permissible. (*Id.* at 11).

### C. Plaintiff's Reply

On April 6, 2026, Plaintiff filed a reply, continuing to argue that the Court lacks diversity jurisdiction and should remand the case to state court and award Plaintiff attorney's fees and costs, including for the time that Plaintiff's counsel spent on the reply brief. (ECF No. 11).[2]

### IV.   ANALYSIS[3]

### A. Subject Matter Jurisdiction

Plaintiff's motion to remand argues that the Court lacks subject matter jurisdiction in this case because the pending claims are based on state law and there is no diversity jurisdiction because the Plaintiff and Azzara are both California citizens. (*See* ECF No. 8).

Under 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States." 28 U.S.C. § 1332(a). Such diversity jurisdiction applies only to cases where the citizenship of each plaintiff is diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis* 519 U.S. 61, 68 (1996) ("The current general-diversity statute, permitting federal district court jurisdiction over suits for more than $50,000 'between ... citizens of different States,' 28 U.S.C. § 1332(a), thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant.") (footnote omitted).

Moreover, federal law allows a defendant to remove a state court civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District

---

[2] On April 7, 2026, the presiding District Judge referred the motion to dismiss and motion to remand to the undersigned. (ECF No. 12).

[3] The Court agrees with Plaintiff that it is appropriate to decide the motion to remand first, because, if the Court does not have subject-matter jurisdiction over the case, it could not decide WestRock's motion to dismiss. *See Stoff v. Wells Fargo Bank, N.A.*, No. 3:21-CV-00793-BEN-KSC, 2021 WL 5449036, at *4 (S.D. Cal. Nov. 22, 2021) ("Here, although Defendant filed its motions before Plaintiff's Motion to Remand, the Court considers Plaintiff's motion first because if the Court lacks jurisdiction, it also lacks the authority to decide Defendant's motions to dismiss and strike."). In light of the Court's recommendation regarding Plaintiff's motion to remand, it declines to address the merits of Defendant's motion to dismiss in these findings and recommendations.

courts have "original jurisdiction" under 28 U.S.C. § 1332(a), *i.e.*, diversity jurisdiction, so long the amount in controversy exceeds $75,000 and the parties are completely diverse, meaning "there is no plaintiff and no defendant who are citizens of the same State." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1112 (9th Cir. 2016) (citation omitted).

Here, because one of the defendants, Azzara, is the citizen of the same state as Plaintiff, there is no diversity of citizenship and this Court lacks subject matter jurisdiction.

In its opposition, WestRock concedes that both Plaintiff and Azzara reside in California but argues that removal was nevertheless proper because Azzara had not been served at the time of removal. (ECF No. 10, pp. 3-5). In support, Defendant cites to a line of cases concerning "snap-removal," where a defendant removes a case subject to diversity jurisdiction, where one defendant resides in the forum, but that "forum-defendant" has not yet been properly joined and served. These "snap-removal" cases concern application of the "forum-defendant" rule against removal when one of the defendants resides in the forum, even where the parties are diverse. Specifically, the forum-defendant rule states that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"[S]nap-removal" refers to an exception to the forum-defendant rule where a defendant is permitted to remove a case, despite one of the defendants residing in the forum, if the defendant "removes the case before a forum-defendant is 'properly joined and served' in the case." *Guerrero v. SFS Beauty CA LLC*, No. 25-CV-1133-JES-KSC, 2025 WL 2460193, at *2 (S.D. Cal. Aug. 26, 2025) (noting that where there is a "snap removal," "[m]any district courts within this Circuit have held that . . . § 1441(b)(2) does not bar this removal based on the plain text of the statute").[4]

However, the situation addressed in these "snap-removal" cases all involve the situation where the parties are diverse, *i.e.*, there is no plaintiff and no defendant who are citizens of the same state. This is because "snap-removal" is an exception to the forum-defendant rule, which

---

[4] While some courts have concluded that "snap removal" is permissible, the Ninth Circuit has noted that "[d]istrict courts in circuits like ours that have not decided the permissibility of snap removal are divided on the matter." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 964 n.17 (9th Cir. 2024).

itself only applies to cases subject to diversity jurisdiction. *See Caterpillar*, 519 U.S. at 68 ("When a plaintiff files in state court a civil action *over which the federal district courts would have original jurisdiction based on diversity of citizenship*, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant 'is a citizen of the State in which such action is brought,' § 1441(b).") (emphasis added).  Snap-removal does not confer jurisdiction where there is not otherwise diversity jurisdiction. As one court has explained, "[f]or purposes of determining diversity jurisdiction under § 1332(a), the fact that Plaintiff had not yet served the nondiverse defendant at the time of removal is irrelevant." *Wagner v. SpaceX*, No. 2:25-CV-04703-SB-MAR, 2025 WL 2161333, at *1 (C.D. Cal. July 28, 2025); *see Colbert v. Tesla, Inc.*, No. 25-CV-09311-JST, 2025 WL 3295384, at *1 (N.D. Cal. Nov. 26, 2025) (concluding that § 1441(b)(2) "applies only to cases that are 'otherwise removable solely on the basis of' diversity jurisdiction"); *Carrick v. Peloton Interactive, Inc.*, No. 24-CV-00212-PCP, 2024 WL 3378332, at *3 (N.D. Cal. July 10, 2024) (noting that, "even if snap removal were available, it still requires complete diversity between the parties").

Indeed, none of WestRock's cases support WestRock's argument that this Court has diversity jurisdiction despite Plaintiff and a defendant being from the same state merely because the defendant who resides in the forum had not been served at the time of removal. (*See* ECF No. 10, p. 3). Rather, all of those cases involve diverse parties.  For example, in *Adelaja v. Guillen*, No. 24-CV-08159-SI, 2025 WL 502050, at *1 (N.D. Cal. Feb. 14, 2025), the plaintiff was a New York citizen and both defendants were California citizens. In *Mellon v. Sierra Donor Servs.*, No. 2:25-CV-01998-TLN-CKD, 2025 WL 3002042, at *2 n.4 (E.D. Cal. Oct. 24, 2025), the plaintiffs were Florida citizens and the named defendants were citizens of Tennessee, New Mexico, and California. Lastly, in *May v. Haas*, No. 2:12-CV-01791-MCE, 2012 WL 4961235, at *1 (E.D. Cal. Oct. 16, 2012), the plaintiffs were citizens of Colorado and Kansas and one defendant was a citizen of California and the other defendant was "a Nevada Corporation with its principal place of business in Wisconsin."[5] Accordingly, the parties were already completely diverse in these cases, unlike here.

---

[5] Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

Thus, WestRock's reliance on the "snap-removal" exception to the "forum-defendant" rule is not a basis for exercising jurisdiction where, as here, there is otherwise no diversity of citizenship.

### B. Sham Defendant

Next, WestRock argues that the Court can disregard Azzara's citizenship in determining diversity jurisdiction because "Azzara is a sham defendant whom Plaintiff fraudulently joined to destroy diversity." (ECF No. 10, p. 5).

A "sham" defendant is a defendant who is "fraudulently joined to the lawsuit for the purpose of defeating diversity." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 547 (9th Cir. 2018). "There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 548 (internal quotation marks and citation omitted). However, the second means—the inability to establish a cause of action—does not require the same inquiry as a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 549 ("But the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent."). Importantly, "[a] claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* Rather, the pertinent inquiry is whether a defendant can show "that an individual[ ] joined in the action cannot be liable on any theory." *Id.* at 548 (internal quotation marks and citation omitted). "[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (internal quotation marks and citation omitted).

The Ninth Circuit has upheld fraudulent joinder "where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims" and "where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." *Id.* However, it has "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* at 548–49.

The Court thus looks to Plaintiff's claims against Defendant Azzara to determine if they are so clearly meritless that Plaintiff could not possibly prevail such that Azzara should be deemed a "sham defendant" and disregarded for assessing diversity jurisdiction.  Plaintiff's complaint alleges that, on the same day he filed an EEOC charge of discrimination, defendant Azzara (WestRock's HR representative) took adverse action against him. Specifically, she called his doctor's office and falsely accused Plaintiff "of manipulating and coercing his medical providers into issuing accommodation notes" and also "alleged that the medical notes provided by Mr. Serrato were fraudulent and threatened the medical practice with legal action and licensure investigations." (ECF No. 1-2, p. 8).  When Plaintiff learned of this, he wrote Azzarra "inquiring as to why WestRock thought it was appropriate to threaten his doctor with a lawsuit for simply treating [him]." (*Id.*). However, Azzara denied making the threats and stated that "she called to allegedly confirm the restrictions identified in the doctor's note were indeed legitimate." (*Id.*). However, Dr. Sihota, one of Plaintiff's doctors, later "wrote to Ms. Azzara affirming Ms. Azzara had engaged in [the] exact conduct she denied." (*Id.*). Among other things, Sihota noted that Azzara made statements suggesting that Plaintiff was manipulating his provider and that Azzara "accused Dr. Sihota of being 'very unprofessional' and that Dr. Sihota's accommodation letter 'was not necessary for the patient.'" (*Id.*). Based on such facts, Plaintiff brings claims for harassment, defamation, and invasion of privacy against Azzara. (*Id.* at 12-13).

The Court finds that nothing in these allegations or the circumstances of Plaintiff bringing this lawsuit suggest that Plaintiff fraudulently added Azzara to this lawsuit as a "sham" defendant merely to destroy diversity jurisdiction. On the contrary, Azzara is an HR representative at WestRock who directly interacted with Plaintiff and his medical provider in a way that Plaintiff alleges violated state law.

In support of its argument that Azzara is a "sham defendant" who can be disregarded for diversity jurisdiction, WestRock makes a number of legal arguments based on California case law.  For example, Westrock argues that Azzara's calls to the doctor should be considered commonly necessary personnel management actions, rather than harassment. (ECF No. 10, p. 6). WestRock also argues that the incidents were "occasional, isolated, sporadic, or trivial." (*Id.*). WestRock also argues that "there is only a single sentence where Plaintiff alleges that Azzara

falsely accused Plaintiff of manipulating and coercing his medical providers," and thus the allegation should be considered am improper general conclusion. (*Id.* at 7). WestRock also argues that Azzara's statements should be considered "statements to Plaintiff's physician about *their* evaluation of Plaintiff's medical condition and workplace accommodations, not about Plaintiff himself." (*Id.* at 8). WestRock also argues that the communications were privileged because "WestRock and Plaintiff's medical provider have the requisite 'common interest' in Plaintiff's medical accommodations." (*Id.*). WestRock next argues that "accusing Plaintiff of manipulating and coercing his medical providers . . . is a statement of opinion, not a false statement of fact." (*Id.*). WestRock also argues that Plaintiff "does not have a reasonable expectation of privacy in the information he disclosed." (*Id.* at 9).

However, none of these legal arguments demonstrate that Plaintiff fraudulently joined Azzara in order to destroy diversity jurisdiction.  While WestRock presents potentially colorable defenses to Plaintiff's claims, none of WestRock's arguments identify an obvious and clear legal flaw in Plaintiff's inclusion of Azzara as a defendant or show that Azzara cannot be liable on any theory.  *Cf. United Computer Systems, Inc. v. AT&T Corp.,* 298 F.3d 756, 761 (9th Cir. 2002) (finding that a defendant who was not a party to the contract underlying the lawsuit was fraudulently joined).  The Court declines to engage in the searching inquiry of California case law required to determine whether WestRock's arguments as to all claims against Azzara would ultimately prevail. It is enough to find that WestRock has failed to identify any flaw in Plaintiff's claims against Azzara that is so obvious as to demonstrate that Azzara is a sham defendant who need not be considered for the purposes of establishing diversity jurisdiction.

Accordingly, because Azzara is not a "sham" defendant, and she and Plaintiff are both California citizens, the Court recommends that this case be remanded to the Fresno County Superior Court based on the Court's lack of diversity jurisdiction.

## V.   ATTORNEY'S FEES AND COSTS

Plaintiff seeks a total award of $10,147.50 in attorney's fees and costs for the briefing on the motion to remand "[b]ecause WestRock's removal lacked an objectively reasonable basis in both law and fact." (ECF No. 11, p. 9). Plaintiff cites 28 U.S.C. § 1447(c), which provides as follows: "An order remanding the case may require payment of just costs and any actual

10

expenses, including attorney fees, incurred as a result of the removal."

WestRock in turn argues that it "had an objectively reasonable basis for its removal," citing cases regarding the permissibility of "snap removal." (ECF No. 10, p. 11).

As the Supreme Court has concluded, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Here, WestRock lacked an objectively reasonable basis for removal.  Westrock removed the case based on diversity jurisdiction despite knowing that the parties were not diverse. Moreover, WestRock's arguments based on "snap-removal" and "sham defendant" were not an objectively reasonable basis to assert diversity jurisdiction.  As explained above, "snap removal" cannot create diversity jurisdiction, and none of WestRock's cases cited in its opposition establish otherwise; rather, those cases all concerned the situation where the parties were completely diverse, yet one of the defendants resided in the forum.

Further, none of the cases WestRock cited in its notice of removal provided an objectively reasonable basis for removal based on "snap removal." WestRock cites *Hernandez v. Ignite Rest. Grp., Inc.*, 917 F. Supp. 2d 1086, 1089 (E.D. Cal. 2013) for the proposition that unserved defendants do not have to join the notice of removal, but that legal proposition is not contested here. (ECF No. 1, p. 5; ECF No. 10, p. 4). WestRock's next cited case, *Dechow v. Gilead Scis., Inc.*, 358 F. Supp. 3d 1051, 1054 (C.D. Cal. 2019), supports the use of "snap removal" as an exception to the "forum-defendant" rule in cases involving diverse parties, but does not anywhere suggest that it confers diversity jurisdiction where the parties are not diverse. (ECF No. 1, p. 5). On the contrary, that case noted that "[t]he parties do not dispute that complete diversity exists between Plaintiffs and Defendant, and that the amount in controversy exceeds $ 75,000." *Dechow*, 358 F. Supp. at 1053. WestRock's final case, *Zirkin v. Shandy Media, Inc.*, No. 2:18-CV-09207-ODW (SSx), 2019 WL 626138, at *1–2 (C.D. Cal. Feb. 14, 2019), likewise recognizes "snap removal" but not that it creates jurisdiction. (ECF No. 1, p. 5). In that case, Plaintiff was a Maryland citizen and defendants were California citizens. *Zirkin*, 2019 WL 626138, at *1.

In short, WestRock has failed any legal authority for its position that a case involving non-

diverse parties, such as is the case here, may be removed to federal court on the basis of diversity jurisdiction. *See Menchaca v. Howmet Aerospace*, Inc., No. 2:23-CV-00098-JLS-MRW, 2023 WL 2504995, at *3 (C.D. Cal. Mar. 14, 2023) ("But no case holds that defendants can use snap removal as an end-run around the diversity jurisdiction statute's requirement of complete diversity.").

Nor was it objectively reasonable to assert that Plaintiff had fraudulently joined Azzara in order to defeat diversity jurisdiction. WestRock's brief fails to identify any evidence of fraudulent intent on behalf of Plaintiff. It also fails to identify any obvious flaw to Plaintiff's claims. Moreover, WestRock's own cases make clear that legal arguments appropriate for a motion to dismiss are not sufficient to establish that a defendant was a "sham" for diversity purposes.

The Court thus recommends finding that WestRock removed this case without an objectively reasonable basis to do so and that Plaintiff be awarded reasonable attorney's fees incurred in opposing WestRock's improper removal.

Having determined that attorney's fees should be awarded, the Court considers what a reasonable fee is. "In the Ninth Circuit, courts use the lodestar method to calculate attorney fee awards under § 1447(c)," which is determined by multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *W.H. Breshears, Inc. v. Delaware N. Companies Parks & Resorts at Yosemite, Inc.*, No. 1:16-CV-1129 AWI SAB, 2016 WL 7010501, at *5 (E.D. Cal. Nov. 30, 2016).

One of Plaintiff's attorneys, Jacob Sarabian, has provided two declarations (ECF No. 8-1, pp. 5-6; ECF No. 11-1, p. 2) with the motion to remand and reply brief supplying the following information about attorney's fees.

| Attorney and approximate years' experience | Hourly Rate Requested | Hours spent and tasks | Total Requested |
|---|---|---|---|
| Jacob Sarabian, approximately 8 years experience | $450 | 11 hours total (3 hours on removal and motion to remand and 8 | $4,950 |

| | | hours on reply) | |
|---|---|---|---|
| Nathan J. Martin, approximately 5 years experience | $400 | 9.7 hours on removal and motion to remand | $3,880 |
| Warren R. Paboojian, approximately 39 years experience | $775 | 1.7 hours on removal and motion to remand | $1,317.50 |
| | | | |
| **TOTALS** | | **22.4 hours** | **$10,147.50** |

Regarding a reasonable hourly rate, "[f]ee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court finds that Plaintiffs' rates are above what courts have found reasonable for this area. *See Beard v. Cnty. of Stanislaus*, No. 1:21-CV-00841-ADA-SAB, 2023 WL 199200, at *13 (E.D. Cal. Jan. 17, 2023) ("In the Fresno Division of the Eastern District of California, across a variety of types of litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience.").

Here, the Court concludes that a reasonable hourly rate for Attorney Paboojian, who has more than twenty years' experience, is $400 and $250 for Attorneys Sarabian and Martin, who have five and eight years' experience.

As for the reasonable number of hours, Plaintiff "should provide documentary evidence to the court concerning the number of hours spent," and hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. *McCown v. City of Fontana*, 565 F.3d 1097, 1102

13

(9th Cir. 2009).

For the initial motion to remand, 14.4 total hours were spent, and counsel has provided sufficient descriptions of the work, like Attorney Martin "performed 9.7 hours of work in connection with the removal and Motion, consisting of analyzing procedural requirements governing removal, researching and analyzing statutory authority and authority within the Ninth Circuit, analyzing competing authority addressing snap removal, and drafting and finalizing the Motion and supporting papers." (ECF No. 8-1, p. 5). The Court concludes that 14.4 hours is a reasonable amount of time. *See W.H. Breshears, Inc.*, 2016 WL 7010501, at *6 (approving 12 hours of work in connection with motion to remand).

However, the Court will recommend reducing the time awarded for the reply brief from 8 to 4 hours for a total of 18.4 hours expended on the remand briefing.

After considering the reduced hourly rates and reduced number of hours, the total amount of attorney's fees that the Court will recommend be awarded is $4,855 as reflected in the following table:

| Attorney | Hourly Rate | Hours spent and task | Total |
|---|---|---|---|
| Jacob Sarabian | $250 | 7 hours total (3 hours on removal and motion to remand and 4 hours on reply) | $1,750 |
| Nathan J. Martin | $250 | 9.7 hours on removal and motion to remand | $2,425 |
| Warren R. Paboojian, approximately 39 years experience | $400 | 1.7 hours on removal and motion to remand | $680 |
| | | | |
| **TOTALS** | | **18.4 hours** | **$4,855** |

## VI.    CONCLUSION AND RECOMMENDATIONS

For the reasons given above, the Court recommends finding that it lacks subject matter jurisdiction over this case and it should be remanded to state court. And because the Court has no subject matter jurisdiction over this case, WestRock's pending motion to dismiss should be denied as moot. *See Castillo v. Hoag Mem'l Hosp. Presbyterian*, No. 8:23-CV-00117-FWS-ADS, 2023 WL 12167633, at *3 (C.D. Cal. July 3, 2023) (denying motion to dismiss as moot after remanding case to state court). Lastly, because WestRock lacked an objectively reasonable basis to remove this case, Plaintiff should be awarded $4,855 in attorney's fees.

Accordingly, IT IS RECOMMENDED as follows:

1. Plaintiff's motion to remand (ECF No. 8) be granted and this matter be remanded to the Fresno County Superior Court, with a certified copy of the remand order being mailed to the state court clerk under 28 U.S.C. § 1447(c).

2. WestRock's motion to dismiss be denied as moot. (ECF No. 4).

3. Plaintiff be awarded attorney's fees in the amount of $4,855.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 17, 2026**                    /s/ _Eric P. Grogi_
                                                UNITED STATES MAGISTRATE JUDGE

15